Barak Lurie (SBN 144887)
Brent A. Kramer (SBN 256243)
Travis A. Corder (SBN 237575)
**LURIE & KRAMER**
12121 Wilshire Boulevard, Suite 300
Los Angeles, California  90025
Telephone:(310) 478-7788
Facsimile: (310) 347-4442

*Attorneys for Plaintiff DARREN WILLIAMS*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARREN WILLIAMS, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>S&P GLOBAL INC., a New York corporation, IHS MARKIT LTD., a Bermuda exempted company, IHS GLOBAL INC., a Delaware corporation,<br><br>        Defendants. | Case No. _____<br>[Assigned to _____]<br><br>**COMPLAINT FOR:**<br>  **(1)** **Wrongful Termination**<br>  **(2)** **Whistleblower Retaliation, Lab. Code §1102.5**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff DARREN WILLIAMS ("Plaintiff" or "WILLIAMS"), an individual, alleges the following against Defendants S&P GLOBAL INC., IHS MARKIT LTD. and IHS GLOBAL INC. (collectively referred to herein as "Defendants"), and Does 1 through 50:

<u>PARTIES</u>

1.      WILLIAMS is an individual who formerly resided in the County of Los Angeles, California and formerly worked for Defendants in Long Beach and Seal Beach, California, in the Counties of Los Angeles and Orange, respectively

(both counties are located within the Central District of California). WILLIAMS currently resides in St. Louis, Missouri.

2.     On information and belief, and based on internet information publicly available on March 8, 2022, Defendant S&P GLOBAL INC. ("S&P") is a New York corporation that, by way of a corporate merger, has recently become the parent company and/or owner of two other Defendant companies discussed below, IHS MARKIT LTD. and IHS GLOBAL INC.

3.     On information and belief, also based on internet information publicly available on March 8, 2022, S&P's principal place of business is located at 55 Water Street, New York, NY 10041-0004.

4.     On information and belief, also based on internet information publicly available on March 8, 2022, S&P maintains offices in Monterey, Los Angeles, and San Francisco, California, and at all times relevant to this Complaint, has been conducting business in California and within the Central District of California.

5.     On information and belief, based on internet information publicly available on March 8, 2022, Defendant IHS MARKIT LTD. ("IHS MARKIT") is a Bermuda company that is or was, at certain times relevant to this Complaint, the parent company and sole owner of its wholly-owned subsidiary, Defendant IHS GLOBAL INC.

6.     On information and belief, based on internet information publicly available on March 8, 2022, IHS MARKIT's principal place of business is located at 4th Floor Ropemaker Place, 25 Ropemaker Street, London EC2Y 9LY (Great Britain).

7.     On information and belief, IHS MARKIT at all times relevant to this Complaint was conducting business in California, either directly or through its subsidiaries and divisions.

8.     On information and belief, based on internet information publicly available on March 8, 2022, Defendant IHS GLOBAL INC. ("IHS GLOBAL") is a Delaware corporation and at times relevant to this Complaint was conducting business in California and formerly employed WILLIAMS.  On or about February 13, 1987, IHS GLOBAL registered with the California Secretary of State as a foreign (Delaware) corporation and has continued conducting business in the State of California at all times relevant to this Complaint. On information and belief, based on internet information publicly available on March 8, 2022, IHS GLOBAL's principal place of business is located at 15 Inverness Way East, Englewood, Colorado.

9.     WILLIAMS alleges on information and belief that IHS GLOBAL is and was at all times relevant to this Complaint an entity that is or was wholly owned and/or controlled by IHS MARKIT and/or S&P.

10.     S&P, IHS MARKIT and IHS GLOBAL are referred to collectively herein as "IHS."

11.     On information and belief, and based on internet information publicly available on March 8, 2022, at times relevant to this Complaint, IHS jointly maintained and continues to maintain multiple offices in the State of California, including the Seal Beach, California, office, where WILLIAMS was formerly employed by IHS GLOBAL at the time of his termination.

12.     WILLIAMS alleges on information and belief that at all times herein, Defendants, and each of them, acted as the agents, servants, employees and co-conspirators of each other, and acted within the purpose, scope and authorization of such agency, service, employment and conspiracy. In addition, each of the Defendants ratified and approved the acts of each of the other Defendants acting for or on behalf of the former.

**JURISDICTION AND VENUE**

13.     This Court has subject matter jurisdiction of this action based on diversity, 28 U.S.C. §1332, because WILLIAMS, on the one hand, and Defendants, on the other hand, are citizens of different states and the amount in controversy in this action exceeds $75,000.[1]

14.     WILLIAMS is a citizen of the United States and is a citizen of the state of Missouri, where he resides and has been domiciled since approximately May 2020.

15.     Defendant S&P is a citizen of New York, its state of incorporation, which is also the state within which its principal place of business is located.

16.     Defendant IHS MARKIT is a citizen of Bermuda, its country of original incorporation; or, if upon proof it is confirmed that IHS MARKIT has been fully acquired by merger by Defendant S&P, Defendant IHS MARKIT is a citizen of New York, which is Defendant S&P's state of incorporation; and Defendant IHS MARKIT is also a citizen of Great Britain, which is the location of its principal place of business.

17.     Defendant IHS GLOBAL is a citizen of Delaware, its state of original incorporation; or, if upon proof it is confirmed that IHS GLOBAL has been fully acquired by merger by Defendant S&P, Defendant IHS GLOBAL is a citizen of New York, which is Defendant S&P's state of incorporation; and Defendant IHS GLOBAL is also a citizen of Colorado, which is the location of its principal place of business.

18.     This Court has personal jurisdiction over all Defendants because all Defendants regularly do business in the State of California and/or were regularly doing business in the State of California at the time of the alleged wrongdoing to

---

[1] For diversity jurisdiction purposes, a corporation is a "citizen" of both the state in which it was incorporated and the state in which it has its principal place of business.  28 U.S.C. §1332(c).

LURIE & KRAMER
LOS ANGELES

4

WILLIAMS which is the subject of this action; and/or because they were doing business specifically with WILLIAMS, in California, at the time of the alleged wrongdoing to WILLIAMS which is the subject of this action.

19.     This Court has personal jurisdictional over S&P because, at all relevant times herein, S&P has had sufficient minimum contacts with California to satisfy California's long arm statute and the California and United States Constitutions.  On information and belief:

(a)     S&P maintains at least four offices in California and purposefully established contacts with California, and purposefully directed its activities at many forum residents with knowledge that its conduct conceivably would or could cause harm in this state;

(b)     S&P, by merger, acquired and/or became the parent company of IHS MARKIT and/or IHS GLOBAL. This lawsuit relates to and arose out of IHS MARKIT's and IHS GLOBAL's activities and contacts with and within California, and with WILLIAMS specifically while he resided in and was employed by IHS in California, and on information and belief, IHS MARKIT and IHS GLOBAL had and continue to conduct continuous and systematic business activities within California;

(c)     IHS MARKIT and IHS GLOBAL contacted WILLIAMS by phone, e-mail, and/or mail within California;

(d)     IHS MARKIT's and IHS GLOBAL's conduct caused loss and/or damage to WILLIAMS, who was a California resident at the time he was, as discussed in this Complaint, wrongfully terminated from his employment;

(e)     California has a strong interest in providing a forum for, and protecting, its residents, including WILLIAMS, and in regulating S&P's business;

(f)     California's exercise of personal jurisdiction over S&P, which is not only a national but a global company, comports with fair play and substantial justice.

20.     This Court has personal jurisdictional over IHS MARKIT because, at all relevant times herein, IHS Markit has had sufficient minimum contacts with California to satisfy California's long arm statute and the California and United States Constitutions.  On information and belief:

(a)     IHS MARKIT regularly conducted business activities, either directly or through its subsidiaries or divisions, such as IHS GLOBAL, in California, and purposefully established contacts with California, and purposefully directed its activities at forum residents, including WILLIAMS, with knowledge that its conduct conceivably would or could cause harm in this state;

(b)     This lawsuit relates to and arose out of IHS MARKIT's activities and contacts with California, and with WILLIAMS in particular while he resided in and was employed by IHS in California, and on information and belief, IHS MARKIT conducts continuous and systematic activities within California;

(c)     IHS MARKIT contacted WILLIAMS by phone, e-mail, and/or mail within California;

(d)     IHS MARKIT's conduct caused loss and/or damage to WILLIAMS while WILLIAMS was still a California resident;

LURIE & KRAMER
LOS ANGELES

**COMPLAINT**

(e)     California has a strong interest in providing a forum for, and protecting, its residents, including WILLIAMS, and in regulating IHS MARKIT's business;

(f)     California's exercise of personal jurisdiction over IHS MARKIT comports with fair play and substantial justice.

21.     Moreover, on information and belief, IHS MARKIT:

(a)     Is or was a party to the sales commission contracts with WILLIAMS that gave rise, in part, to the wrongful termination of WILLIAMS that is the basis for this action;

(b)     Is or was a party to the contract with SSA Auto Airbag Settlement, LLC ("SSA") that gave rise, in part, to the wrongful termination of WILLIAMS that is the basis for this action;

(c)     Listed on its website, www.ihsmarkit.com, that it had 6 offices in California, including an office at Seal Beach, where WILLIAMS worked;

(d)     Uses or used a United-States based website and e-mail server, and assigns or assigned "@ihsmarkit.com" e-mail addresses to employees, including WILLIAMS, as well as Bryan Funke and others, who sent and received e-mails within California, including e-mails relating to the IHS MARKIT client SSA and the sales commission contracts with WILLIAMS that gave rise, in part, to the wrongful termination of WILLIAMS that is the basis for this action;

(e)     Has or had a Salesforce.com account that WILLIAMS and other IHS MARKIT and IHS GLOBAL employees used to track events relating to the SSA relationship and work in support thereof;

(f)     IHS MARKIT does or did substantial business with the state of California.  For example, IHS MARKIT used or uses California DMV state registration data, which is critical to its IHS MARKIT's business model;

(g)     Some of IHS MARKIT's biggest clients are in California, including Honda, Hyundai, Mazda, Kia, Mitsubishi, Aston Martin, Karma, Tesla and many others.

22.     This Court has personal jurisdictional over IHS GLOBAL because, at all relevant times herein, IHS GLOBAL has had sufficient minimum contacts with California to satisfy California's long arm statute and the California and United States Constitutions.  On information and belief:

(a)     IHS GLOBAL has or had multiple offices in California, including the Long Beach and Seal Beach offices in which WILLIAMS worked.  This lawsuit relates to and arose out of IHS GLOBAL's activities and contacts with California, and IHS has conducted continuous and systematic business activities within California;

(b)     IHS GLOBAL purposefully established contacts with California, and purposefully directed its activities at forum residents, including WILLIAMS, with knowledge that its conduct could or would conceivably cause harm in this state;

(c)     IHS GLOBAL contacted WILLIAMS by phone, e-mail, and/or mail within California;

(d)     IHS GLOBAL's conduct caused loss and/or damage to WILLIAMS at the time he resided in and was employed in California;

**COMPLAINT**

(e)    California has a strong interest in providing a forum for, and protecting, its residents, including WILLIAMS, and in regulating IHS GLOBAL's business;

(f)    California's exercise of personal jurisdiction over IHS GLOBAL comports with fair play and substantial justice.

23.    Moreover, IHS GLOBAL:

(a)    Registered with the California Secretary of State as a foreign corporation that is conducting business in the State of California, and has conducted business in California since 1987;

(b)    Paid WILLIAMS his wages, including pay and commissions, while WILLIAMS was employed by IHS GLOBAL in California and was residing in California;

(c)    Listed itself as WILLIAMS' employer on paystubs;

(d)    Has or at relevant times had an appointed agent for service of process in California.

24.    This Court has personal jurisdiction over S&P, IHS MARKIT and IHS GLOBAL for the additional reasons that:

(a)    The negotiation, execution, and performance of the contract(s) that relate to the wrongful termination of WILLIAMS in this action occurred and were to occur in California;

(b)    IHS GLOBAL/IHS MARKIT terminated Plaintiff's employment while WILLIAMS was employed in California and was residing in California;

(c)    Evidence and witnesses are located in California;

(d)    The cost and burdens to the Plaintiff are higher if this litigation were brought outside California.

25.     Venue is proper in this Court and district because at all times relevant to this Complaint, all Defendants were "residents" of this district for purposes of the venue statute, 28 U.S.C. §1391(c)(2)[2], because all Defendants were doing business within this district (the federal Central District of California), had sufficient minimum contacts with this district, and this Court had personal jurisdiction over them for the reasons set forth in paragraphs 19-24 of this Complaint, above.

## GENERAL ALLEGATIONS

26.     WILLIAMS was a sales professional and long-time employee of IHS for over ten (10) years. WILLIAMS gave exemplary service to IHS. Throughout his dedicated service to IHS, WILLIAMS received positive job reviews and was promoted twice by IHS management. Since 2016, WILLIAMS served as a Senior Account Executive at the company.

### Williams' Sales Commission Structure with IHS

27.     On or around March 29, 2018, Williams signed his Fiscal Year ("FY") 2018 SIP with IHS Markit, which governed Williams' commission and bonus structure for the 2018 Fiscal Year (December 1, 2017, to November 30, 2018). A true and correct copy of this SIP is attached hereto as **"Exhibit 1"** and incorporated herein by reference.

---

[2] For venue purposes, corporations are "deemed to reside in **any** judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. §1391(c)(2) (emphasis added). Put another way, for venue purposes, a corporation "resides" in all districts in which it is subject to personal jurisdiction. *See In re Volkswagen of America, Inc.* 545 F.3d 304, 312-313 (5th Cir. 2008); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316 (1945).

LURIE & KRAMER
LOS ANGELES

## COMPLAINT

28.     Williams signed another version of the FY 2018 SIP with IHS Markit on December 18, 2018.

29.     Pursuant to both versions of the FY18 Sales Incentive Plan, among other provisions, IHS promised WILLIAMS monetary incentives for securing sales for IHS. Specifically, IHS promised WILLIAMS the following incentive structure:

- "Between 0% to 70% attainment: You will earn 0.79% of your Performance Sales OTC for every 1% of goal attainment. For example, if you attain 70% of your goal, you will earn 55% of your Performance Sales OTC.

- Between 70% to 100% attainment: You will earn 1.50% of your Performance Sales OTC for every 1% of goal attainment.

- Beyond 100% of attainment: You will earn 6.67% of your Performance Sales OTC for every incremental 1% above 100%."

(*See* **Exhibit 1**, p. 2)

30.     Pursuant to the FY18 Sales Incentive Plan, WILLIAMS' Fiscal Year 2018 sales quota was $4,081,656.  WILLIAMS' "On Target Commission" or "OTC," i.e., the commission he was to receive if he achieved his Fiscal Year 2018 sales quota, was $45,760.

31.     According to the formula provided in paragraph 12 of the FY18 Sales Incentive Plan, IHS promised WILLIAMS a cash bonus in addition to WILLIAMS' base salary if WILLIAMS achieved sales over one hundred percent (100%) of WILLIAMS' quota.  More specifically, Defendant promised WILLIAMS $3,052.19, for every one percent (1%) achieved above his Fiscal Year 2018 sales quota of $4,081,656.

**Williams Obtained SSA Auto Airbag Settlement LLC as a Client for IHS**

32.     On information and belief, SSA Auto Airbag Settlement, LLC ("SSA") was established on or around August 2017 in connection with the

LURIE & KRAMER
LOS ANGELES

**COMPLAINT**

settlement of a class action lawsuit involving Takata-brand airbags.  On information and belief, SSA works with the U.S. District Court for the Southern District of Florida to effectuate the settlement.

33.    Starting on or around October 19, 2017, WILLIAMS began working on an agreement in which IHS would become a provider of vehicle registration data for SSA in support of SSA's implementation of the Takata class action settlement, thereby making SSA a client of IHS and rendering the SSA deal subject to WILLIAMS' FY18 Sales Incentive Plan.

34.    WILLIAMS brought the SSA deal to IHS. WILLIAMS also brought the SSA business opportunity to the attention of his supervisors at IHS who, after meeting and consulting with upper IHS management, recognized that WILLIAMS was the sole IHS employee who was responsible for bringing the SSA business opportunity to IHS and specifically assigned the SSA account to WILLIAMS. WILLIAMS handled the initial meetings with SSA representatives by himself and without any other IHS employee in attendance at these critical meetings.

35.    Since WILLIAMS was responsible for bringing the SSA deal and this new business opportunity to IHS, the SSA deal was subject to the FY18 Sales Incentive Plan. As provided in the FY18 Sales Incentive Plan, WILLIAMS was entitled to receive any bonus of any amount that would result from the SSA deal and this transaction with IHS pursuant to the terms and conditions of the FY18 Sales Incentive Plan.

36.    WILLIAMS worked long hours and in good faith to ensure that SSA would become an IHS customer.  WILLIAMS had numerous direct communications with SSA representatives and organized numerous meetings between SSA and IHS to ensure that SSA would become an IHS customer and that the SSA deal would be subject to the bonus payment structure listed in the FY18 Sales Incentive Plan.

**COMPLAINT**

37.     WILLIAMS' sales efforts to SSA on behalf of IHS resulted in a historically large sale for IHS.  On or around January 19, 2018, SSA signed with IHS a four (4)-year agreement with an estimated value to IHS of at least $84,449,602.

38.     If it were not for WILLIAMS' hard work and perseverance in his sales efforts with SSA, IHS would never have secured SSA as a client and obtained this extremely valuable contract.

### Williams Should Have Received a $2,103,948.12 Commission for the SSA Deal Yet IHS Only Offered Williams a $10,000 "Cross-Sell Bonus"

39.     Based on the value of Year One (1) of the SSA Auto Airbag Settlement, LLC agreement of $29,402,381 (and the 4-year value of $84,449,602), WILLIAMS is, and at all times was, entitled to receive from IHS a $2,103,948.12 commission, broken down as follows:

(a) the $45,760 commission for achievement of 100% of the Fiscal Year 2018 quota; and

(b) a $ 2,081,525.72 additional commission for quota over-achievement of 681.98%.

40.     However, on April 26, 2018, rather than paying him his duly-earned full commission on the IHS-SSA agreement, IHS only offered WILLIAMS a $10,000 "cross-sell bonus" for "identifying the SSA opportunity and passing [it] to the proper team within IHS Markit."

41.     The cross-sell bonus cited by SSA was an inapplicable, pretextual attempt by IHS to avoid (get out of) its contractual obligation to pay WILLIAMS' full commission due on the IHS-SSA agreement.

42.     WILLIAMS made numerous good-faith attempts to secure the applicable commission he was due from IHS including, without limitation, by

retaining legal counsel to request the full commission WILLIAMS was and is legally entitled to receive under the terms and conditions of the FY18 Sales Incentive Plan. IHS summarily rejected all of WILLIAMS' good faith efforts to obtain payment of this commission. IHS' steadfast refusal to do the right thing and honor the language contained in the FY18 Sales Incentive Plan forced WILLIAMS to pursue his legal remedies, so as to ensure the payment of the commission from the SSA deal that WILLIAMS was responsible for bringing to IHS.

### Williams Pursued His Legal Remedies Against IHS
### for IHS' Failure to Pay Williams the SSA Commission

43.     Because IHS did not honor the commission structure contained in the FY18 Sales Incentive Plan, WILLIAMS sought enforcement of his legal rights under both common law and under the California Labor Code's Private Attorneys General Act of 2004, referred to herein as Labor Code §2698 *et seq*. ("PAGA").

44.     On August 3, 2018, WILLIAMS' counsel transmitted the required "Employee's Notice" of the PAGA violations to the California Department of Industrial Relations, Labor and Workforce Development Agency ("LWDA") and IHS.

45.     After the requisite 65 days passed with no notice of investigation received from the LWDA, on October 12, 2018, WILLIAMS exercised his right to bring his PAGA complaints himself, along with his other legal complaints, against IHS by filing a lawsuit against IHS MARKIT and IHS GLOBAL entitled *Darren Williams v. IHS Markit Ltd., et al.,* in the Superior Court of the State of California, County of Orange, case number 30-2018-01025587-CU-BC-CXC ("Plaintiff's Enforcement Action").

46.     On November 16, 2018, defendants in Plaintiff's Enforcement Action removed the case to federal court, namely, to this Court, the United States District

LURIE & KRAMER
LOS ANGELES

**COMPLAINT**

Court for the Central District of California, where Plaintiff's Enforcement Action acquired the new federal case number 8:18-cv-02064-JLS-ADS.

47.     Unwilling to accept a $10,000 "cross-sell bonus" when IHS owed and still owes him a $2,103,948.12 commission on the SSA deal, WILLIAMS has continued to litigate Plaintiff's Enforcement Action in the federal district court.

## **IHS Terminates Williams on a Pretext**

48.     WILLIAMS continued working for IHS even after the dispute regarding his SSA commission arose and even after resorting to filing his Plaintiff's Enforcement Action in court in October 2018 to try to obtain payment of his rightful commission.  While that action was pending (it still is pending in the federal court as of today; the SSA commission dispute still has not been resolved), on or about April 15, 2020, IHS notified WILLIAMS that his employment with IHS was terminated effective on or about May 1, 2020.

49.     In April of 2020, WILLIAMS met with his manager Mike Ray and a IHS Markit HR Representative via a conference call to discuss his termination. During the call the HR representative presented a severance package for WILLIAMS to sign. At no point did the HR representative highlight that the severance document contained a paragraph that required WILLIAMS to stop pursuing his current lawsuit and any future legal action against IHS in exchange for the package. Further, despite the fact Plaintiff's Enforcement Action against IHS Markit had been ongoing since 2018, they did not inform counsel for WILLIAMS of these events.

50.     IHS told WILLIAMS that he was being laid off due to a Covid-19 related RIF (reduction in force).  However, WILLIAMS had never received a bad performance review in his history of working for IHS and, upon information and

belief, just two years earlier, had secured one of the largest deals (the SSA deal, for more than $84 million) in the history of IHS' automotive division.

51.     Further, and also upon information and belief, within only a couple of months after terminating WILLIAMS, the Seal Beach IHS office where WILLIAMS had worked opened up two (2) sales positions seeking two candidates to do the same work WILLIAMS had done so successfully for years.

52.     IHS' alleged reason for terminating WILLIAMS were false and pretextual. In reality, IHS was ridding themselves of him in retaliation for his having exercised his legal rights to dispute their egregious failure to pay him the commission due him on the SSA deal, and to simply avoid having to pay him the commission.

## FIRST CAUSE OF ACTION

### (Wrongful Termination – Against all Defendants)

53.     Plaintiff re-alleges and incorporates the above paragraphs of this Complaint as if fully set forth herein.

54.     IHS was WILLIAMS' employer at the time WILLIAMS obtained the SSA deal for IHS and through the date that IHS informed WILLIAMS of IHS' termination of his employment (April 15, 2020) and WILLIAMS' last effective date of employment with IHS (April 30, 2020).

55.     IHS terminated WILLIAMS' employment.

56.     On information and belief, IHS' termination of WILLIAMS' employment was substantially motivated by a violation of public policy. Specifically, on information and belief, IHS wrongfully and illegally terminated WILLIAMS' employment not because of a true RIF (reduction in force) based on Covid-19, but in reality to avoid having to pay WILLIAMS the SSA deal commission owed to him that was still accruing and accumulating, and which

would continue to accrue and accumulate, through at least the SSA deal's 4-year initial term (i.e., from 2018, when the SSA-IHS contract was obtained through WILLIAMS' efforts, through at least 2022, the expiration of the initial 4-year term of the contract).

57.     On information and belief, the substantial and true purpose of IHS' termination of WILLIAMS was not IHS' alleged need for a RIF, but to frustrate WILLIAMS' legitimate expectations of receiving the disputed SSA deal commission. This purpose was a substantial and wrongful motivating reason for IHS' decision to terminate WILLIAMS.  Commissions and bonuses are categorized as "wages" under the California Labor Code, and the prompt payment of wages due an employee is required by Labor Code §§216(a), 201, 202, 204 and 222 and is a fundamental public policy of California, serving the interest of the public at large and not merely the interest of the employee to whom the wages are due.[3]

58.     IHS' wrongful termination of WILLIAMS' employment was a factual and legal cause of WILLIAMS' damages, and these damages harmed WILLIAMS by depriving him of his job, job title, position, and compensation, which included, at the time WILLIAMS was terminated, a base salary; plus health coverage, a 401k plan, and other benefits valued at approximately $28,000 per year; plus WILLIAMS' ability to earn (and his substantial record of earning) sales commissions and bonuses.

59.     As a proximate result of IHS' wrongful termination of WILLIAMS, WILLIAMS is entitled to compensatory damages in the estimated amount of at least $2,562,881.25, exclusive of and not including any amounts due to WILLIAMS with respect to the unpaid SSA-IHS deal commission, which amounts

---

[3] *Gould v. Maryland Sound Indus., Inc.*, 31 Cal.App.4th 1137, 1147 (Cal. Ct. App. 1995).

are being been pursued in WILLIAMS' separate court action (Plaintiff's Enforcement Action). In the present action, due to IHS' wrongful termination of his employment, WILLIAMS is also entitled to his costs of suit, and all available pre-judgment and post-judgment interest.

60.     In terminating WILLIAMS' employment to avoid having to pay the full amount of the SSA deal commission to WILLIAMS timely or at all, Defendants engaged in the acts alleged above with a willful, conscious and/or reckless disregard of the rights of WILLIAMS and the consequences of their conduct.  Defendants also engaged in the acts alleged above with actual, fraudulent, and malicious intent constituting oppression, fraud and malice under California Civil Code §3294. Accordingly, WILLIAMS is entitled to and hereby requests punitive damages in a sum to be proven at trial to deter the Defendants from so acting in the future.

## **SECOND CAUSE OF ACTION**

### **(Whistleblower Retaliation, Labor Code §1102.5 – Against All Defendants)**

61.     Plaintiff re-alleges and incorporates the above paragraphs of this Complaint as if fully set forth herein.

62.     IHS also wrongfully retaliated against WILLIAMS in violation of Labor Code §1102.5 by terminating him, in substantial part, because of his having reported IHS' unlawful activity of failing to pay WILLIAMS' earned wages (the SSA deal commission) first to the LWDA (California Department of Industrial Relations, Labor and Workforce Development Agency) and then to the Court by transmitting his counsel's PAGA notice letter to the LWDA and then instituting Plaintiff's Enforcement Action in Superior Court.

63.     Specifically, in his August 3, 2018 Private Attorney General Act Notice Pursuant to California Labor Code §2699 directed to the LWDA (herein,

## **COMPLAINT**

the "PAGA Notice"), WILLIAMS, through his counsel, reported his good faith belief that IHS had, by failing to pay WILLIAMS the full amount of the SSA commission due him, violated Labor Code §204 (failure to timely pay wages); Labor Code §226 (failure to provide itemized wage statements ); Labor Code §1174 (failure to maintain records); and that due to these violations, IHS was required to pay WILLIAMS, among other damages, attorneys' fees, interest and penalties (Labor Code §§218.6, 226(e), 1194, 2698 *et seq.,* and 2802).

64.    Thereafter, WILLIAMS attached the PAGA Notice to his complaint in the Plaintiff's Enforcement Action that was filed October 12, 2018 in Superior Court, and repeated both his report of and allegations of IHS' wage and hour law violations in that complaint.

65.    As set forth above, on April 15, 2020, IHS terminated WILLIAMS' employment effective May 1, 2020, in substantial part to unlawfully retaliate against WILLIAMS for WILLIAMS' having reported the wage and hour violations to a government agency (LWDA) and to the Court.

66.    Labor Code §1102.5(b) prohibits discharging an employee for disclosing an alleged violation of a statute of public importance (such as the wage and hour laws, which apply to commissions) to a governmental agency (such as the LWDA), or for providing information to any public body conducting an investigation, hearing or inquiry (the LWDA or the Court).  IHS' retaliatory penalizing of WILLIAMS for WILLIAMS' having reported the failure to pay WILLIAMS' wages (the SSA deal commission), and for the other alleged wage and hour law violations, was a substantial and wrongful motivating reason for IHS' decision to terminate WILLIAMS.

67.    WILLIAMS' actions in reporting the wage and hour law violations to the LWDA and later to the Court were protected activity that IHS penalized by terminating him, in violation of Labor Code §1102.5. Both legally and factually,

WILLIAMS' reporting the violations was a substantial cause of IHS' decision to terminate WILLIAMS' employment.

68.     IHS' wrongful termination of WILLIAMS' employment was a factual and legal cause of WILLIAMS' damages, and these damages harmed WILLIAMS by depriving him of his job, job title, position, and compensation, which included, at the time WILLIAMS was terminated, a base salary; plus health coverage, a 401k plan, and other benefits valued at approximately $28,000 per year; plus WILLIAMS' ability to earn (and his substantial record of earning) sales commissions and bonuses.

69.     As a proximate result of IHS' wrongful termination of WILLIAMS, WILLIAMS is entitled to compensatory damages in the estimated amount of at least $2,562,881.25, exclusive of and not including any amounts due to WILLIAMS with respect to the unpaid SSA-IHS deal commission, which amounts are being pursued in WILLIAMS' separate court action (Plaintiff's Enforcement Action). In the present action, WILLIAMS is also entitled to his costs of suit, all available pre-judgment and post-judgment interest, and his reasonable attorneys' fees[4].

70.     In terminating WILLIAMS' employment to avoid having to pay the full amount of the SSA deal commission to WILLIAMS timely or at all, Defendants engaged in the acts alleged above with a willful, conscious and/or reckless disregard of rights of WILLIAMS and the consequences of their conduct. Defendants also engaged in the acts alleged above with actual fraudulent and malicious intent constituting oppression, fraud and malice under California Civil Code §3294. Accordingly, WILLIAMS is entitled to and hereby requests punitive damages in a sum to be proven at trial to deter the Defendants from so acting in the future.

---

[4] Labor Code §1102.5(j).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff prays for judgment against Defendants, and each of them, jointly and severally, and that the Court award Plaintiff as follows:

### **On the First Cause of Action (Wrongful Termination)**

For compensatory damages of at least $2,562,881.25;

For punitive damages in an amount to be proven at trial;

For costs, prejudgment interest, and post-judgment interest; and

For all other relief the Court deems just and proper.

### **On the Second Cause of Action (Whistleblower Retaliation, Labor Code 1102.5)**

For compensatory damages of at least $2,562,881.25;

For punitive damages in an amount to be proven at trial;

For reasonable attorneys' fees;

For costs, prejudgment interest, and post-judgment interest; and

For all other relief the Court deems just and proper.

DATED: March 17, 2022                    **LURIE & KRAMER**


                                          _/s/ Brent A. Kramer_____
                                          Brent A. Kramer, Esq.
                                          Attorneys for Plaintiff DARREN
                                          WILLIAMS, an individual

**COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**JURY TRIAL DEMAND**

Plaintiff hereby demands a jury trial.


DATED: March 17, 2022         **LURIE & KRAMER**


                              /s/ *Brent A. Kramer*
                              Brent A. Kramer, Esq.
                              Attorneys for Plaintiff DARREN
                              WILLIAMS, an individual

LURIE & KRAMER
LOS ANGELES

22

**COMPLAINT**